James S. Brown, J.
Landlord for the second time brings an article 78 proceeding to review the determination of the State Bent Administrator’s order reducing the subject tenant’s rent because of landlord’s failure to paint.
Landlord’s papers, inartistically drawn, disclose a letter-writing, affidavit-memoranda formula replete with repetitious data and unseemly material that attempts to becloud the one simple issue here involved, to wit: Was the reduction of the maximum rent of the subject apartment by the Local Bent Administrator proper?
By reason of the vociferous plaints made by landlord against the procedure employed by respondent and particularly the inflammatory statements concerning certain employees of the Administrator, it is necessary and pertinent to review the facts herein at some length.
On November 14,1957 tenant applied to the Bent Commission for a decrease of the maximum rent for landlord’s failure to paint his apartment. Landlord based its refusal on the following grounds: It was under no obligation to do so since there was no two-year practice, contending by letter inter alia, it was not customary to paint every two years, but only when necessary in landlord’s opinion; that the tenant was paying little rent; that a new lease with a 15%> increase was due, including landlord’s request that the tenant clean his premises and, upon tenant’s refusal to do as requested, there would be no painting of the subject apartment and landlord would “ fight this matter in the Supreme Court and wherever else necessary.” Landlord further requested an inspection, a hearing and opportunity to submit witnesses and documentary evidence.
The Local Bent Administrator, in processing this application, caused a physical inspection to be made on January 10, 1958, the report of which showed that the entire apartment was badly in need of painting, that the ceiling and walls were peeling, discolored, cracked and stained. Landlord, by letter to the subject tenant, demanded the latter to withdraw his application at once, reiterating the request inter alia that the tenant execute a new lease with a 15% increase, further stating, if tenant *824 refused to do so before the rent was reduced, landlord would fight and never paint the said apartment as long as tenant lives therein, adding in a postscript that it would be cheaper for him (the landlord) to have the rent reduced than to expend money for painting tenant’s apartment.
On March 31, 1958, on the basis of the record, the Local Rent Administrator issued an order decreasing tenant’s maximum rent. Landlord’s protest, based on procedural objections and that only a portion of the apartment required painting, was denied by the Administrator on the ground that landlord failed to rebut the two-year painting presumption.
Landlord’s first article 78 proceeding contended that it was not granted a hearing, nor afforded an opportunity to examine the inspector’s report upon which the decrease of rent was based. Upon respondent’s application and the landlord’s consent, this court by order remitted the matter to the Administrator for further processing.
Respondent thereafter, by order, reopened the protest proceedings and scheduled a conference for October 30, 1958 at 2:00 p.m., with due notice to all the parties. The record shows that landlord by its president personally appeared at 11:00 a.m., on the day scheduled for hearing, stating he would be unable to appear at 2:00 p.m., the time scheduled for the conference; that he did not have any books or records with him; and that he expressly waived his right to appear at such conference, albeit requesting a further opportunity to produce such books and data, submitting written objections to the manner in which the proceedings were being conducted and to the personnel conducting such proceedings, concluding with his objections to the reduction of rent for failure to paint.
In view of the exigencies presented, the Administrator, in writings, afforded petitioner further opportunities to submit such pertinent records he desired to produce, and, in addition, gave landlord additional time to examine the file including the tenant’s statements and evidence that were produced at the October 30, 1958 conference, informing the landlord he had until November 12, 1958 to appear at respondent’s office for the purpose hereinbefore outlined. That such date, at landlord’s request, was postponed to the afternoon of November 14, 1958.
The landlord took advantage of the opportunity afforded him by the Administrator, appeared at the principal office, where he examined the file in this proceeding and submitted purported records consisting of a ledger of payments made by it to its painter to show what the painting practice was between 1939 *825 and 1943, and that during such five-year period landlord’s bill for painting was $4,112.75. However, no records were produced to show when specific apartments in the subject premises were painted, but respondent, from such records, established that in the 24 apartments (in two buildings) operated by landlord as a single unit, the average painting per room during each two-year period was $14.66.
Respondent, on January 20, 1959, by its order denied the landlord’s protest and affirmed the Local Rent Administrator’s order.
The two-year presumption as to painting is a presumption established by decisional law (Matter of Pacford Realty Corp. v. Abrams, 141 N. Y. S. 338, 340). The Administrator, after garnering and considering all the evidence and proof, found as a fact and determined that landlord failed to rebut the two-year painting practice. It appears from the record that landlord was not estopped from doing that which it was required to do, especially since the president of the landlord wrote in his letter dated July 7, 1958 “ and we are willing to go along with you ’ ’ and, again, in its letter dated August 13, 1958, ‘ ‘ and had we known of its contents we might have complied with it rather than to suffer the loss of rent ”. Yet, in spite of these statements, landlord adamantly refused to render the painting service which the regulations required of him and to which the tenant is entitled. It is evident from the entire record that respondent afforded landlord more than the customary opportunities (1) to examine the files herein, (2) to attend conferences scheduled at movant’s convenience, and (3) to submit all available proof to substantiate its position. Landlord’s plaints as to due process, procedure and respondent’s personnel I find are wholly without merit. Nor does the court condone landlord’s militant “ sign a lease at higher rent or else ” attitude, which is in strict violation and contrary to the State Rent and Eviction Regulations.
The question at issue was before the Administrator and the facts were resolved against the landlord. The Administrator is the trier of the facts, subject to appropriate judicial review. I find from the proceedings had herein the respondent had ample basis for his determination. The judicial function is exhausted Avhen there is found to be a rational basis for the conclusions approved by the administrative body (Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108). The court may not substitute its judgment for that of the Administrator (Matter of First Terrace Gardens v. McGoldrick, 1 N Y 2d 1) *826 since I find from the papers there is no showing that the action taken was arbitrary, capricious or unreasonable.
The application is accordingly denied and the landlord’s petition dismissed.
Settle order on notice.